Reese, j.
delivered the opinion of the court.
An action of assumpsit to recover five hundred dollars, as being money had and received to the use of Hurt, was brought by him against Williams the plaintiff in error. The case was, that Williams had sold to Hurt, for the purpose of breeding mules, a jackass, at the price of fifteen hundred dollars; five hundred of which, Were paid him, and a note given for the remaining thousand. On the 2nd day of February, 1835, Williams gave to Hurt a_bill of sale for the animal, in which he /‘warranted him to be sound and healthy, and as sure a foal-getter as common for jacks.” About the 12th of April, 1836, Hurt, who resided in the Western District, came to Nashville to see Williams, and informed him that the jack was not a good foal-getter, and requested Williams, that the animal should be taken back by him. Williams objected to taking him back, and insisted that Hurt should keep him, and make further trial of him. Whereupon, the following agreement was signed by both parties: “Whereas, doubts are entertained of the jack, I, Willoughby Williams, sold to Robert Hurt, of Carroll county, Tennessee, not being a sure foal-getter, as is common for jacks, the said Hurt and myself have this day entered into the following agreement, 'to wit: The said Hurt is to stand the said jack from the time he returns home, till the 1st of September next, and on the first of September, 1837, if it shall be ascertained that two-thirds of the mares has proved in foal, then the said Hurt will be due the said Willoughby Williams one thousand dollars at that date; but if it shall be ascertained, that one-half, and under two-thirds of the mares has proved in foal, then the said Hurt will be due at the time aforesaid only seven hundred dollars. And if it shall be ascertained, that less than one-half of the mares has proved in foal, then it shall be optionary with said Hurt to pay at the time aforesaid, five hundred dollars, or return the jack to said Williams, if he be living. But if the said jack die before September, 1837, the said Hurt is to pay nothing more. The said Hurt is to be governed by the written instructions of the said Williams.”
It was proved that from April to September, 1836, the animal was well kept and properly governed, and was in good general health and condition, but the product of the season turned out, in the following year, to amount to two mares only, being little more' than one-tenth of the number of mares submitted to him. There *70 was also proof, tending to show his incompetency in the’year 1835, At the time indicated in the contract of April, 1836, Hurt returned the animal to Williams, who took him back. His Honor, the Circuit Judge, charged the jury, that, if from the evidence, they believed, that before the contract of April, 1836, there had been a breach in the warranty, given upon the sale in 1835, they should find for the plaintiff below, if not for the defendant.
The verdict was for the plaintiff, which the court, on a motion for a new trial, refused to set aside, and the defendant has prosecuted his writ of error, and insists here, first, that the. charge of the court is erroneous, and secondly, that the verdict, upon a proper construction of the contracts set forth, cannot be maintained. If there be error in the charge of the court, it is not error of which the plaintiff here can justly complain: because we think, the proper construction and legal effect of the contracts, connected with the conduct of the parties relating to them, make the verdict which was found, the only one which ought to have been rendered. The second contract is to be regarded as based upon the first, and as incorporated with it. It was made at the instance, and for the benefit of Williams, in order that a further and fuller experiment of the competency of the animal might be made under his instructions. It ascertained, what the first contract left uncertain, namely, that the ordinary competency of such animals, shall be regarded as consisting in success in two-thirds of the cases, and the damages for a less than ordinary, but still valuable degree of competency, between two-thirds and one-half, is fixed, in the particular instance at two hundred and fifty dollars. If a near approach to this degree of competency, to wit, one-half of the cases, were made, it was probably thought by the parties, that Hurt might choose to retain him and pay five hundred dollars more, but even then, and especially in the still'worse case which happened, he might choose to return him. He did choose to return him, he was accepted, and the property revested in Williams. The animal may be very valuable to him, to breed with jennets or even perhaps, under his superior management to produce mules. At all events, the legal effect of the return, and the acceptance, is, to terminate both contracts, and to leave the five hundred dollars paid Williams, as money in his hands received to the use of Hurt, and this, without any express stipulation. In a case to which we have beeen referred, Thornton vs. Wynn, 12 Wheat. Rep. 183, *71 Justice Washington, after reviewing a number of cases on this branch of learning, says, the result of these cases is, that if upon a sale, with a warranty, or if, by the special terms of the contract, the vendee is" at liberty to return the article sold, an offer to return it, is equivalent to an offer accepted by the vendor, and in that case the contract is rescinded and at an end, which is a sufficient defence to an action brought by the vendor for the purchase money, or to enable the vendee to maintain an action for money had and received, in case the purchase money has been paid, &c. But here there was not an offer merely to return; the property was returned and accepted by the vendor. See also the other cases referred to at the bar, and commented on by Justice Washington, 1 Term Rep. 123; 7 East, 274: 2 Taunton, 2, &c. We are of opinion, therefore, that the judgment of the Circuit court is correct and must be affirmed.